IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

THE STATE OF ARIZONA,      )
                           )    2 CA-CR 2006-0179
              Appellee,    )    DEPARTMENT B
                           )
         v.                )    O P I N I O N
                           )
EDDIE BRIAN CARR,          )
                           )
              Appellant.   )
_____)

APPEAL FROM THE SUPERIOR COURT OF GRAHAM COUNTY

Cause No. CR2005071

Honorable R. Douglas Holt, Judge

AFFIRMED

Terry Goddard, Arizona Attorney General
  By Randall M. Howe and Eric J. Olsson                                  Tucson
                                                        Attorneys for Appellee

Law Offices of Perry Hicks, P.C.
  By Adam Ambrose                                                  Sierra Vista
                                                       Attorneys for Appellant

E S P I N O S A, Judge.

**¶1**        Appellant Eddie Carr's probation was revoked after he submitted two urine

samples that tested positive for amphetamine and methamphetamine. On appeal, he contends

the trial court erred at his probation violation hearing by admitting the urinalysis reports into

evidence. He argues there was insufficient proof of their reliability and their introduction violated his constitutionally protected confrontation rights. We affirm.

**Factual and Procedural Background**

¶2 In March 2005, Carr pleaded guilty to possession of marijuana and possession of drug paraphernalia, both class six felonies, and attempted aggravated assault with a deadly weapon, a class four felony. In May, the trial court placed him on four years' intensive probation and required that he submit to periodic drug testing. On September 9 and 27, Carr submitted urine samples to the Graham County Probation Department that tested positive for amphetamine and methamphetamine. After each positive test result, the state filed a petition to revoke Carr's probation. In February 2006, the court held a probation violation hearing and found the state had proved by a preponderance of the evidence that Carr had violated the terms of his probation by twice testing positive for drugs. At the disposition hearing in March, the court revoked Carr's probation and sentenced him to the presumptive term of 2.5 years' imprisonment.

¶3 Carr's Graham County probation officer, Herman Andrews, was the sole witness at the violation hearing. Andrews testified he had taken Carr's urine sample on September 27 and mailed it to a laboratory for urinalysis and that the subsequent urinalysis report showed the presence of amphetamine and methamphetamine in the sample. He stated he did not know the laboratory method used to test the sample or the conditions under which it had been analyzed. He further testified he had not personally taken the sample on September 9, it had been taken by Officer Doug Anway, and the urinalysis report for that

sample also showed the presence of amphetamine and methamphetamine. When the state offered the urinalysis reports into evidence, Carr's attorney objected, stating: "Hearsay. Lack of foundation. Also confrontation, *Crawford v. Washington*."[1] The court overruled the objection and admitted the evidence.

**Discussion**

¶4 Carr contends the trial court erred by admitting the urinalysis reports because there was "no evidence of chain of custody of either of the urine samples" and no evidence "of who received the samples at the lab, who opened them, who tested them, what machinery or procedures or protocols were used to conduct the tests, what steps were taken to assure that equipment that was used to test the samples was not adulterated from prior use." Thus, he claims, there was not "sufficient proof of [their] reliability."

¶5 Rule 27.8(b)(3), Ariz. R. Crim. P., 17 A.R.S., provides that, during a probation violation hearing, "[t]he court may receive any reliable evidence not legally privileged, including hearsay." Our courts have repeatedly found urinalysis reports to be reliable, admissible evidence when there is "testimony establishing how the sample was taken" and "nothing to indicate that [the] report [is] inaccurate, or that the hospital testing procedures were generally unreliable." *State v. Flores*, 26 Ariz. App. 400, 401, 549 P.2d 180, 181 (1976); *see also State v. Tulipane*, 122 Ariz. 557, 559, 596 P.2d 695, 697 (1979); *State v. Rivera*, 116 Ariz. 449, 451, 569 P.2d 1347, 1349 (1977); *State v. Snider*, 172 Ariz. 163, 164,

---

[1]Referring to *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004).

3

835 P.2d 495, 496 (App. 1992); *State v. Brown*, 23 Ariz. App. 225, 231, 532 P.2d 167, 173 (1975), *aff'd* 112 Ariz. 29, 536 P.2d 1047 (1975). In such cases, the state need not describe the testing procedures used at the hospital or laboratory, or establish the qualifications of the technicians who performed the tests. *See Snider*, 172 Ariz. at 164, 835 P.2d at 496.

¶6        Here, Andrews testified that, on September 9 and 27, Anway and he, respectively, first observed Carr urinate into a cup, then sealed and numbered each cup, placed each cup in a bag, sealed the bag, placed the bag in a box, sealed the box, and mailed the box to the laboratory for testing. The urinalysis report for each sample indicates that both were "received sealed and intact." Because Andrews's testimony sufficiently established how the samples were taken and submitted for testing and Carr has not presented any evidence to suggest the test results are inaccurate or that the procedures used were generally unreliable, *see Flores*, 26 Ariz. App. at 401, 549 P.2d at 181, we cannot say the trial court abused its discretion in admitting the reports. *See Snider*, 172 Ariz. at 165, 835 P.2d at 497.

¶7        Carr also claims the court erred by admitting the report for the sample taken on September 9 because Anway, who took the sample, did not testify at the hearing and "there was no way to determine whether it was [Carr's] sample that was sent off to the lab to be tested." Carr cites *State v. Portis*, 187 Ariz. 336, 337-38, 929 P.2d 687, 688-89 (App. 1996), in which the trial court had revoked the defendant's probation after it found he had submitted a urine sample that tested positive for cocaine. The director of the rehabilitation program that collected the sample testified at Portis's violation hearing that an employee of the program had told him the sample had been taken by an unknown assistant who was a

4

recovering drug addict and who might have been terminated from his position for testing positive for drugs. *Id*. Division One of this court found the trial court had erred by revoking Portis's probation when there was neither "first-hand knowledge nor reliable hearsay" to establish "that the tested sample came from [Portis]." *Id*. at 338, 929 P.2d at 689.

¶8    Here, however, Andrews testified that Anway had personally taken the sample on September 9, and a "Test Request & Chain of Custody Document" contained in the record, signed by both Anway and Carr, shows Anway obtained the sample at 9:44 p.m. at the Graham County Probation Department in Safford. Andrews further testified that the number on the sample Anway sent to the laboratory matched the number on the laboratory report of the sample tested. Thus, there was "reliable hearsay" to establish "that the tested sample came from [Carr]" and, in contrast to *Portis*, the reliability of the urinalysis report was not impugned by double hearsay involving an unidentified party who was a known drug addict. *Id*. We have previously held that, when an officer testifies that a urine sample was taken by a second officer and submitted to a laboratory for testing, the trial court does not abuse its discretion by admitting the resulting report. *See Brown*, 23 Ariz. App. at 231, 532 P.2d at 173. Likewise, the trial court here did not abuse its discretion by admitting the September 9 urinalysis report.

¶9    Last, citing *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 (2004), Carr contends that admitting the urinalysis reports violated his right to confrontation guaranteed under the Sixth Amendment to the United States Constitution and article II, § 24 of the

5

Arizona Constitution, because he was unable to question Officer Anway and the laboratory personnel who had performed the urinalysis.[2]

¶10	This argument lacks merit because a probation violation hearing is not a stage of criminal prosecution, and the right to confrontation at a violation hearing is not "'of the same scope as afforded in the trial stage of the prosecution.'" *In re Maricopa County Juvenile Action No. J-83341-S*, 119 Ariz. 178, 182, 580 P.2d 10, 15 (App. 1978), *quoting Brown*, 23 Ariz. App. at 230, 532 P.2d at 172; *see also Portis*, 187 Ariz. at 338, 929 P.2d at 689 ("The judicial process in revocation hearings need not mirror the judicial process guaranteed to defendants in criminal trials; at a revocation hearing, a court possesses greater flexibility and is not bound by the same strict rules of evidence and procedure."); *Kanuck v. Meehan*, 165 Ariz. 282, 284, 798 P.2d 420, 422 (App. 1990) (noting Sixth Amendment confrontation right not applicable to sentencing or probation revocation proceedings). Thus, the Sixth Amendment right to confrontation and the United States Supreme Court's decision in *Crawford* do not apply to probation violation hearings. *See, e.g., Reyes v. State*, 868 N.E.2d 438, 440 n.1 (Ind. 2007); *State v. Palmer*, 158 P.3d 363, 366-67 (Kan. Ct. App. 2007).

---

[2]Carr does not separately argue his claim under the Arizona constitution nor did he raise this issue in the trial court; we therefore do not address it other than to note that our supreme court has determined that Arizona's constitution provides substantially the same right to confrontation as the Sixth Amendment and requires no different analysis. *State v. Vincent*, 159 Ariz. 418, 432-33, 768 P.2d 150, 164-65 (1989); *see also State v. Parks*, 211 Ariz. 19, ¶¶ 24-25, 116 P.3d 631, 637 (App. 2005).

**¶11** Moreover, although not argued by Carr but correctly noted by the state, to the extent probationers have a limited Fourteenth Amendment right to confrontation, that right is not abridged when the state presents "reliable hearsay" evidence against the probationer, *Brown*, 23 Ariz. App. at 231, 532 P.2d at 173, and the court "'finds good cause for not allowing confrontation.'" *Kanuck*, 165 Ariz. at 284, 798 P.2d at 422, *quoting Gagnon v. Scarpelli*, 411 U.S. 778, 786, 93 S. Ct. 1756, 1762 (1973). As discussed above, the trial court could readily find the urinalysis reports in this case reliable, and we cannot say the court abused its discretion "in giving greater weight to judicial economy than the unsupported objections by [Carr] in admitting the reports and [Andrews's] testimony based thereon." *Brown*, 23 Ariz. App. at 231, 532 P.2d at 173. We find no violation of Carr's confrontation rights.

### Disposition

**¶12** The trial court's revocation of Carr's probation and imposition of sentence are affirmed.

_____
PHILIP G. ESPINOSA, Judge

CONCURRING:

_____
PETER J. ECKERSTROM, Presiding Judge

_____
GARYE L. VÁSQUEZ, Judge

7