(158 P.3d 363)
No. 96,165

STATE OF KANSAS, *Appellee,* v. JOHNNY PALMER, JR., *Appellant.*

Opinion filed May 18, 2007.

*Heather Cessna,* of Kansas Appellate Defender Office, for appellant.

*Keith E. Schroeder,* district attorney, and *Phill Kline,* attorney general, for appellee.

Before MCANANY, P.J., GREEN and CAPLINGER, JJ.

CAPLINGER, J.: Johnny Palmer, Jr., appeals the district court's revocation of his probation. Specifically, he challenges the court's admission of an affidavit as sole evidence of his violations without testimony of the declarant or evidence of the declarant's unavailability, contrary to *Crawford v. Washington,* 541 U.S. 36, 158 L. Ed. 2d 177, 124 S. Ct. 1354 (2004).

While we decline to extend the right to confront witnesses as provided in *Crawford* to defendants in probation revocation proceedings, we nevertheless find the affidavit was improperly admitted without evidence of the declarant's unavailability. Accordingly, we reverse the probation revocation and remand to the district court with directions to engage in the appropriate balancing test before admitting the affidavit.

*Factual and procedural background*

In December 2003, Johnny Palmer, Jr. pled guilty to one count of possession of cocaine and one count of possession of drug paraphernalia in Reno County. The district court sentenced Palmer to 36 months' probation with an underlying prison term of 68 months. In August 2004, the State filed a motion to revoke Palmer's probation for cocaine use and failure to report as directed. Shortly thereafter, the motion was voluntarily withdrawn.

In March 2005, the State filed another motion to revoke Palmer's probation because he had again tested positive for cocaine, failed to report as directed, and failed to successfully complete drug and alcohol treatment. The district court conducted a hearing on the State's motion, at which time Palmer admitted to having vio-

lated the terms of his probation. The court revoked and reinstated Palmer's probation, ordering him to complete drug and alcohol treatment and the Sedgwick County residential community corrections program.

In December 2005, the State again sought to revoke Palmer's probation for failing to report and testing positive for cocaine. The district court conducted a second probation revocation hearing. Brad Wedel, Palmer's former court services officer from Reno County, testified on behalf of the State. He indicated Palmer had been transferred to Sedgwick County. The State attempted to offer into evidence Wedel's certified statement of Palmer's Sedgwick County community corrections officer. Palmer objected to the statement as improper hearsay because the affiant was unavailable for cross-examination. The district court overruled Palmer's objection and admitted the statement into evidence. In essence, the affidavit indicated that Palmer had violated his probation by ingesting and testing positive for cocaine and failing to report as directed.

Relying solely on the affidavit, the district court revoked Palmer's probation and ordered him to serve his original sentence. Palmer timely appeals.

On appeal, Palmer argues the district court erred in admitting statements of the community corrections officer, who did not testify at the probation revocation hearing. Citing *Crawford,* 541 U.S. 36, Palmer claims the admission of the affidavit violated his rights to confrontation under the Sixth Amendment to the United States Constitution and § 10 of the Kansas Constitution Bill of Rights.

While probation revocations are reviewed for an abuse of discretion, due process violations are questions of law over which the appellate court exercises de novo review. *Hearst v. State,* 30 Kan. App. 2d 1052, 1055-56, 54 P.3d 518 (2002).

Prior to *Crawford,* the Kansas Supreme Court found sworn statements to be admissible at probation revocation in certain circumstances. See *State v. Yura,* 250 Kan. 198, 207, 825 P.2d 523 (1992) ("[A]ffidavits may be admitted for good cause shown without violating the probationer's right to confront witnesses."). To ascertain the meaning of "good cause," the *Yura* court adopted the

rationale of *United States v. Bell*, 785 F.2d 640 (8th Cir. 1986). *Yura*, 250 Kan. at 207-08.

As a consequence of the United States Supreme Court's decision in *Crawford*, the importance of the Confrontation Clause in criminal proceedings has increased dramatically. In *Crawford*, the State sought to introduce the tape-recorded statements from a police interrogation of the defendant's wife, who did not testify at trial because of the marital privilege. 541 U.S. at 38-40. The Court held the Confrontation Clause bars "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." 541 U.S. at 53-54. While declining to define "testimonial," the Court held that the term, at a minimum, includes "prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." 541 U.S. at 68. Because the defendant did not have the opportunity to cross-examine his wife during her police interrogation, the Court held that admission of the interrogation statements violated the defendant's Sixth Amendment right to confrontation. 541 U.S. at 68-69.

Here, Palmer argues that an affidavit alleging a probation violation clearly falls within the realm of testimonial evidence and therefore should have been excluded under *Crawford*. Palmer further suggests that *Crawford* has abrogated the "good cause" test set forth in *Yura*. Therefore, Palmer urges us to find the State was required to demonstrate the unavailability of the affiant and that Palmer had an opportunity to cross-examine the affiant prior to the hearing. Finally, Palmer reasons that even if *Yura's* good cause test is still intact, the State failed to produce any evidence that confrontation was undesirable or impractical.

### Application of Crawford to probation revocation proceedings

Thus, we must first decide whether *Crawford* operates to limit the use of affidavits and other hearsay evidence in probation revocation proceedings. If so, the district court erred in relying upon the affidavit in this case to revoke Palmer's probation. If not, we must nevertheless determine whether *Yura's* good cause test prohibits admission of the affidavit under the facts here.

Whether *Crawford* limits admission of sworn statements at a probation revocation hearing appears to be a matter of first impression for this court. We note, however, that a panel of this court recently issued *State v. Duskie*, No. 95,949, unpublished opinion filed March 2, 2007, addressing the defendant's challenge to the district court's reliance on his probation record as recounted by his court services officer at the probation revocation proceeding. Without elaborating, the panel cited *Crawford's* basic confrontation rule before proceeding to a harmless error analysis based on defendant's failure to object at the hearing and counsel's admission that defendant failed to abide by the terms of his probation. *Duskie*, slip op. at 10.

Here, the State insists that admission of the affidavit was permissible under K.S.A. 2006 Supp. 22-3716(b), which delineates the procedure for revoking a defendant's probation. Under that statute, the court must conduct a hearing at which "[r]elevant written statements made under oath may be admitted and considered by the court along with other evidence" in determining whether the defendant violated the terms of his or her probation. K.S.A. 2006 Supp. 22-3716(b).

The State fails to recognize, however, that K.S.A. 2006 Supp. 22-3716(b) has not been substantively amended since *Crawford*. Rather, the statute as it currently stands is consistent with our Supreme Court's decision in *Yura*. 250 Kan. at 208 (holding K.S.A. 1990 Supp. 22-3716(2) authorizes admission of affidavits constituting relevant written statements made under oath stating the results of a laboratory test). Despite the explicit authorization of K.S.A. 2006 Supp. 22-3716(b), we must nevertheless determine whether *Crawford* has overruled that portion of the statute.

A general survey of other jurisdictions reveals a developing trend in which *Crawford* has *not* been extended to probation revocation proceedings. See *Ash v. Reilly*, 431 F.3d 826, 829-31 (D.C. Cir. 2005); *United States v. Rondeau*, 430 F.3d 44, 47-48 (1st Cir. 2005); *United States v. Hall*, 419 F.3d 980, 985-86 (9th Cir. 2005), *cert. denied* 163 L. Ed. 2d 714 (2005); *United States v. Kirby*, 418 F.3d 621, 627-28 (6th Cir. 2005); *United States v. Aspinall*, 389 F.3d 332, 342-43 (2d Cir. 2004); *United States v. Martin*, 382 F.3d

840, 844 n.4 (8th Cir. 2004); *Jackson v. State,* 931 So. 2d 1062, 1063 (Fla. Dist. App. 2006); *Commonwealth v. Wilcox,* 446 Mass. 61, 67-68, 841 N.E.2d 1240 (2006); *State v. Abd-Rahmaan,* 154 Wash. 2d 280, 287-88, 111 P.3d 1157 (2005); *cf. United States v. Jarvis,* 94 Fed. Appx. 501, 502 (9th Cir. 2004) (holding a probationer must be afforded the right to confront and cross-examine adverse witnesses at revocation proceedings "unless the hearing officer specifically finds good cause for not allowing confrontation").

In *People v. Brown,* 32 App. Div. 3d 1222, 821 N.Y.S.2d 348, *leave to appeal denied by* 7 N.Y.3d 924 (2006), the court specifically recognized that a defendant's right to confront witnesses is limited to the context of criminal prosecution. Similarly, the court in *People v. Turley,* 109 P.3d 1025, 1026 (Colo. App. 2004), reasoned that a defendant's right of confrontation in probation revocation proceedings is somewhat limited because it flows entirely from the Due Process Clause of the Fourteenth Amendment, whereas the rule in *Crawford* was derived from the Confrontation Clause of the Sixth Amendment. See also *Kirby,* 418 F.3d at 627 (noting the Sixth Amendment specifically states that it applies in " 'criminal prosecutions' ").

Like other jurisdictions, Kansas courts have long recognized a substantial difference between criminal prosecutions and probation revocation hearings. The rights of an offender in a probation revocation hearing are not the same as those extended him or her by the United States Constitution upon the trial of the original offense. See, *e.g., State v. Miller,* 20 Kan. App. 2d 378, 385, 888 P.2d 399 (1995). Our Supreme Court has specifically indicated that "[p]robation from serving a service is an act of grace" and a defendant is not entitled to the "full panoply of rights." *Yura,* 250 Kan. at 201, 206 (citing *Morrissey v. Brewer,* 408 U.S. 471, 480, 33 L. Ed. 2d 484, 92 S. Ct. 2593 [1972]). Because probation revocation hearings are not equivalent to criminal prosecutions, they are allowed a more flexible process and consideration of "material that would not be admissible in an adversary criminal trial." *Yura,* 250 Kan. at 207 (quoting *Morrissey,* 408 U.S. at 489). Applying similar reasoning and conforming with current trends in case law,

it is only logical to decline to extend the right to confront witnesses as provided in *Crawford* to defendants in probation revocation proceedings.

Moreover, this conclusion is not contravened by Palmer's argument that use of the affidavit at his probation violation hearing violates the Kansas Constitution because § 10 is more explicit than the Sixth Amendment regarding the right of confrontation. Whereas the Sixth Amendment states the accused shall have the right "to be confronted with the witnesses against him," §10 of the Kansas Constitution Bill of Rights states the accused shall have the right "to meet the witness face to face."

Although Palmer correctly identifies discrepancies between § 10 of the Kansas Constitution Bill of Rights and the Sixth Amendment to the United States Constitution, our court recently disavowed this argument in *State v. Blanchette*, 35 Kan. App. 2d 686, 699, 134 P.3d 19, *rev. denied* 282 Kan. ___ (2006), *cert. denied* 167 L. Ed. 2d 115 (2007). There, the court recognized that while our Supreme Court may interpret the Kansas Constitution differently than the United States Constitution, it has traditionally declined to do so. 35 Kan. App. 2d at 699. In fact, the court in *State v. Busse*, 231 Kan. 108, 110, 642 P.2d 972 (1982), indicated the protections under both Constitutions with regard to confronting witnesses are the same.

" 'It has long been recognized . . . that the right of confrontation under the United States Constitution and the right to meet the witnesses "face to face" under Section 10 of the Kansas Bill of Rights are satisfied when defendant has had an opportunity to cross-examine the witnesses against him. [Citations omitted.]' " *Blanchette*, 35 Kan. App. 2d at 699.

Therefore, we hold the district court did not violate Palmer's right to confrontation under *Crawford* by admitting the affidavit in Palmer's probation revocation hearing.

*Existence of good cause to deny confrontation*

Nevertheless, defendants are entitled to minimal due process rights, including " 'the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation).' " *Yura*, 250 Kan. at 207 (quoting

*Morrissey*, 408 U.S. at 489). The question thus remains whether good cause existed for denying confrontation and whether the district court properly admitted the community corrections officer's statements under *Yura*.

In order to dispense with confrontation pursuant to *Yura*, the court must evaluate (1) the explanation offered by the State as to why confrontation is undesirable or impractical, and (2) the reliability of the evidence offered by the State in lieu of live testimony. 250 Kan. at 208. In other words, the court must "balance the probationer's right to confront an adverse witness against the grounds asserted by the government for not requiring confrontation." *Yura*, 250 Kan. at 208.

In *Miller*, 20 Kan. App. 2d at 379, the defendant argued he was denied his right to confrontation because the only evidence presented to establish the violation of his probation conditions was sworn affidavits. Because the district court failed to make a specific finding that good cause existed for not allowing confrontation, this court remanded the case with directions to the district court to engage in the appropriate balancing test before determining admissibility. 20 Kan. App. 2d at 387-88. Similarly, in *State v. Graham*, 272 Kan. 2, 6, 30 P.3d 310 (2001), our Supreme Court determined that unsubstantiated and unreliable hearsay cannot provide the sole basis for a probation revocation. When hearsay is the only evidence, the indicia of reliability must be substantial in order to furnish legally sufficient grounds for revocation. 272 Kan. at 6.

Here, the district court did not make specific findings as to admissibility of the community corrections officer's affidavit. Despite recognizing the existence of the first factor under *Yura*, the State failed to proffer any explanation as to why confrontation was undesirable or impractical. The State briefly mentioned that the community corrections officer was located in Sedgwick County rather than Reno County, but neither elaborated nor directly indicated the officer's presence was undesirable or impractical. While it may have been impractical for a community corrections officer to travel to Reno County to testify at a probation revocation hearing, the district court did not make this finding.

The second factor of the *Yura* test, reliability of the affidavit in lieu of testimony, also was not addressed here. The transcript from the probation revocation hearing indicates the district court engaged in an extended inquiry as to whether the affidavit in question actually referred to Palmer and not another probationer. Apparently the affidavit referred only to Palmer by name and did not contain any other identifying information such as his social security number. Moreover, the community corrections officer had confused the case numbers and sentencing dates of the two cases. However, other than verifying that the affidavit referred to Palmer, the district court did not make a specific finding that the affidavit was reliable.

Moreover, no finding was made here that the indicia of the affidavit's reliability was substantial—a finding required because hearsay was the only evidence upon which the district court based the probation revocation. See *Graham*, 272 Kan. at 6. In light of the confusion surrounding the community corrections officer's statement and some doubt that Palmer was even the subject of the affidavit, the transcript tends to indicate that the affidavit was not reliable.

We hold the district court erred in admitting the affidavit as the sole evidence of Palmer's probation violation without engaging in *Yura's* two-factor good cause test. The court failed to consider both whether the State proffered an appropriate explanation as to why confrontation was undesirable or impractical, and whether the affidavit was reliable. Therefore, we reverse the revocation of Palmer's probation and remand the case with directions to the district court to engage in the two-factor balancing test before determining admissibility of the affidavit.

Reversed and remanded with directions.