Nos. 100,423
100,515

STATE OF KANSAS, *Appellee*, v. SHANE M. MARQUIS, *Appellant*.

(257 P.3d 775)

Review of the judgment of the Court of Appeals in an unpublished opinion filed June 5, 2009.

Opinion filed August 19, 2011.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Darrin C. Devinney*, county attorney, argued the cause, and *James R. Watts*, assistant county attorney, and *Steve Six*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Shane M. Marquis appeals the district court's determination that he violated the conditions of his probation and the corresponding decision to revoke that probation. Marquis contends that the district court violated his right of confrontation under both the federal and state Constitutions by considering the affidavit of his supervising officer without complying with the requirements for the admission of testimonial hearsay set forth in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). We find that the Sixth Amendment to the United States Constitution right of confrontation is inapplicable in a probation revocation proceeding. However, the Fourteenth Amendment affords a probationer minimum due process rights as a prerequisite to the revocation of probation. We reverse and remand for the district court to make the appropriate inquiry as to whether the State's failure to produce the supervising officer as a witness violated Marquis' due process rights.

## FACTUAL AND PROCEDURAL OVERVIEW

Marquis pled guilty to two drug charges in one case and to felony theft in another case. Sentences on both cases were pronounced at the same hearing and were imposed consecutively. The controlling term of imprisonment for both cases was 52 months, but the court granted Marquis a dispositional departure and placed him on probation.

Nearly a year later, Marquis stipulated to violating the conditions of his probation. The district court revoked Marquis' probation and reinstated it with additional conditions, including a requirement to successfully complete the "boot camp" program at Labette Correctional Conservation Camp.

A few months later, the State again sought to revoke Marquis' probation, this time claiming that he had failed to successfully complete the Labette program. At the revocation hearing, the State produced the testimony of Chuck McGuire, the director of the 13th Judicial District Community Corrections. Nicole Luna, the community corrections officer assigned to Marquis' case, did not testify. Rather, the State presented Luna's affidavit, sworn to under oath, containing the statement that Marquis had been " 'removed

from [Labette] on November 15, 2007, due to disciplinary discharge.' "

In response to the court's inquiry, McGuire testified that Luna, as Marquis' supervising officer, would be the person with direct knowledge of Marquis' case. McGuire had Luna's file and testified that the "chronos" recorded by Luna reflected that Marquis entered Labette on September 24, 2007, and was discharged for a disciplinary reason on November 15, 2007. However, the district court sustained Marquis' hearsay objection to a copy of the Labette discharge report because it was not a sworn statement. Further, McGuire testified that the normal time required to complete the Labette program is 4 to 6 months and that no person had ever successfully completed Labette in less than 2 months.

The district court determined that McGuire's testimony, "in and of itself," was insufficient to establish a probation violation. However, relying on K.S.A. 22-3716(b), the court considered Luna's affidavit because it was a "written statement made under oath by his community corrections officer." The affidavit reflected Marquis' disciplinary discharge from Labette, which was a material violation of Marquis' probation conditions. The court ordered Marquis to the Department of Corrections to serve his prison sentences.

Marquis appealed to the Court of Appeals, which affirmed the revocation. *State v. Marquis*, Nos. 100,423; 100,515, 2009 WL 1591627 (Kan. App. 2009) (unpublished opinion). The Court of Appeals' opinion recites Marquis' claim that the district court's admission of hearsay statements at the revocation hearing violated his *right of confrontation*, under both federal and State constitutions. Then, interestingly, the opinion declares that "[w]hether an individual's *due process rights* were violated is a question of law over which this court exercises de novo review." (Emphasis added.) *Marquis*, 2009 WL 1591627, at *2.

The panel then determined that the ill-defined issue was governed by the holdings in *State v. Palmer*, 37 Kan. App. 2d 819, 158 P.3d 363 (2007), which requires a district court to apply the two-factor "good cause" test set forth in *State v. Yura*, 250 Kan. 198, 207-08, 825 P.2d 523 (1992). The "[t]wo factors to be evaluated in

examining the State's basis for dispensing with confrontation are: (1) the explanation the State offers for why confrontation is undesirable or impractical, and (2) the reliability of the evidence which the State offers in place of live testimony." *Yura*, 250 Kan. 198, Syl. ¶ 4.

The Court of Appeals acknowledged that "the State never offered, and the district court did not request, an explanation for why Luna was unable to attend the hearing and provide live testimony." *Marquis*, 2009 WL 1591627, at * 2. However, the panel found that the district court apparently addressed the affidavit's reliability and, therefore, it "substantially complied with *Palmer*." *Marquis*, 2009 WL 1591627, at * 3. We granted Marquis' petition for this court to review the Court of Appeals' decision.

## RIGHT OF CONFRONTATION

### A. *Standard of Review*

"We employ an unlimited standard of review when addressing issues pertaining to the Confrontation Clause of the Sixth Amendment to the United States Constitution." *State v. Leshay*, 289 Kan. 546, 547, 213 P.3d 1071 (2009); *State v. Ransom*, 288 Kan. 697, 708-09, 207 P.3d 208 (2009) (whether confrontation rights have been violated is a question of law subject to unlimited review).

### B. *Analysis*

Our first inquiry is whether a criminal defendant's Sixth Amendment right of confrontation is applicable to a probation revocation hearing. Marquis acknowledges that Kansas has followed the United States Supreme Court's view, expressed in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973), and *Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), "that revocation of parole [or probation] is not part of criminal prosecution and, thus, the full panoply of rights due in a criminal prosecution is not applicable to parole [or probation] revocation." *Yura*, 250 Kan. at 201. Those cases did not apply the Sixth Amendment Confrontation Clause to parole or probation revocation proceedings.

However, the United States Supreme Court did find that minimum due process rights apply to probation revocation proceedings, so that a defendant facing revocation must be afforded the opportunity to " 'confront and cross-examine adverse witnesses (unless the hearing officer specifically finds *good cause* for not allowing confrontation).' " (Emphasis added.) *Gagnon*, 411 U.S. at 786. In *Yura*, we adopted the aforementioned two-factor test for determining the existence of "good cause." Clearly, the probationer's "confrontation" rights in *Yura* derived from the Due Process Clause of the 14th Amendment to the United States Constitution and not from the Confrontation Clause.

Marquis contends that the watershed opinion in *Crawford v. Washington*, 541 U.S. 36, where the Supreme Court refined its conceptualization and application of confrontation under the Sixth Amendment, abrogated *Yura*'s "good cause shown" test. He argues that *Yura*'s relaxed admissibility standard "appears to be a vestige of the *Ohio v. Roberts* . . . reliability exception to hearsay requirements." Because *Crawford* disapproved of dispensing with the right of confrontation based upon reliability, Marquis asserts that *Crawford* effectively overruled the two-factor test from *Yura* and replaced it with the test that testimonial hearsay may never be admitted unless the declarant is unavailable and the defendant has had a previous opportunity to cross-examine the declarant. We disagree.

First, *Yura* did not emanate from the trustworthiness considerations of *Ohio v. Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), but rather its foundation was the minimum due process requirement enunciated in *Morrissey* and *Gagnon*. The *Crawford* court's determination that the confrontation procedure guaranteed by the Sixth Amendment cannot depend on the hearsay's reliability does not, without more, effect a change in due process jurisprudence. Nothing in *Crawford* indicates an intent to overrule the due process holdings of *Morrissey* and *Gagnon*.

Moreover, even though *Crawford* did not specifically address its applicability to posttrial proceedings, most courts addressing the issue have determined that *Crawford* does not apply in that context. See *Curtis v. Chester*, 626 F.3d 540, 544 (10th Cir. 2010)

("Sixth Amendment rights are not applicable in parole revocation hearings because those hearings are not 'criminal prosecutions.' . . . Because the Sixth Amendment's right to confrontation does not apply in this situation, neither do any Supreme Court cases dealing with it, specifically *Crawford.*"); see also *United States v. Kelley,* 446 F.3d 688, 691 (7th Cir. 2006) (revocation proceedings are not criminal prosecutions for the purpose of Sixth Amendment right to confrontation); *United States v. Rondeau,* 430 F.3d 44, 47 (1st Cir. 2005) (confrontation clause not applicable to parole revocation proceedings because they are not criminal prosecutions); *United States v. Hall,* 419 F.3d 980, 985-86 (9th Cir. 2005) (same); *United States v. Kirby,* 418 F.3d 621, 627 (6th Cir. 2005) (same); *United States v. Aspinall,* 389 F.3d 332, 342-43 (2d Cir. 2004) (same); *United States v. Martin,* 382 F.3d 840, 844 n.4 (8th Cir. 2004) (same); *United States v. Palmer,* 463 F. Supp. 2d 551, 553-54 (E.D. Va. 2006) (same); *Peters v. State,* 984 So. 2d 1227, 1229, 1233 (Fla. 2008) ("revocation of probation . . . proceedings are not criminal prosecutions and [] *Crawford* does not apply"); *State v. Rose,* 144 Idaho 762, 766, 171 P.3d 253 (2007) ("motion to revoke probation is not a criminal prosecution"); *People v. Breeding,* 284 Mich. App. 471, 482, 772 N.W.2d 810 (2009) ("probation revocation proceedings are not a stage of a criminal prosecution"); *State v. Pompey,* 934 A.2d 210, 214 (R.I. 2007) ("*Crawford* does not apply in the probation revocation context or the analogous supervised release revocation context"); *Diaz v. State,* 172 S.W.3d 668, 672 (Tex. App. 2005) (holding *Crawford* does not apply to community supervision revocation hearings).

Likewise, in this state, the Court of Appeals has held that the right of confrontation under *Crawford* does not extend to probation revocation hearings. *Palmer,* 37 Kan. App. 2d at 825 ("[I]t is only logical to decline to extend the right to confront witnesses as provided in *Crawford* to defendants in probation revocation proceedings."). On the other side of trial, this court has held that the Sixth Amendment right of confrontation under *Crawford* is inapplicable at preliminary hearing. *Leshay,* 289 Kan. at 551 ("*Crawford* involved the admission of a testimonial statement at trial, not at a probable cause hearing.").

*Leshay* observed that *Crawford* had not revisited when the full panoply of rights, including the right of confrontation, might arise *prior to trial*. 289 Kan. at 551. Likewise, *Crawford* did not revisit the *posttrial* rights discussed in *Morrissey* and *Gagnon*. Accordingly, our rationale in *Leshay* should apply as well in the posttrial context.

In short, *Crawford* changed *how* the Sixth Amendment right of confrontation is to be applied; it did not purport to change *when* that right applies, *i.e.*, it did not expand the definition of a criminal prosecution. Therefore, even after *Crawford*, a probation revocation hearing is not considered part of a criminal prosecution, and the Sixth Amendment right of confrontation is not applicable.

Marquis makes the back-up argument that the right of confrontation in the Kansas Constitution required the affiant to be personally present, even if the Sixth Amendment did not. He bases that contention on the distinguishing language in the Kansas Constitution Bill of Rights, § 10, which states that an accused "shall be allowed . . . to meet the witness *face to face*." (Emphasis added.) Marquis argues that his right to meet witnesses face to face is a more explicit requirement than his Sixth Amendment right to be confronted with the witnesses against him. What he fails to explain is how the different language in the state constitution makes the state right of confrontation applicable where the federal right of confrontation is inapplicable. We do not discern that the language in § 10 of our Kansas Constitution Bill of Rights effects an expansion of the definition of criminal prosecution and, therefore, it does not apply to a probation revocation hearing. Therefore, we need not ruminate on the possibility that our state constitution means something different than the Sixth Amendment.

Notwithstanding our determination that the Sixth Amendment right of confrontation, and its state counterpart, do not apply to probation revocation hearings, our analysis must continue. By applying *Palmer* and the two-factor test from *Yura*, the Court of Appeals actually decided the case on due process grounds. Moreover, we discern that Marquis has sufficiently argued the due process considerations to preserve that issue for our review.

No one challenges that the *Yura* test for good cause remains the analytical tool for finding that hearsay evidence at a probation revocation hearing comports with minimum due process. We decline to raise that issue *sua sponte*. Therefore, we will apply that test by evaluating: (1) the State's explanation of why confrontation is undesirable or impractical, *i.e.*, why Luna could not or should not have testified in person; and (2) the reliability of Luna's affidavit which the State offered in place of her live testimony. See *Yura*, 250 Kan. 198, Syl. ¶ 4.

The district court did not explicitly discuss the two factors. Nevertheless, we agree with the Court of Appeals' assessment that the district court's comments support a determination that it found the affidavit to be very reliable. However, as the Court of Appeals acknowledged, there is nothing in the record to explain why Luna could not or should not have testified in person, rather than by affidavit. We disagree with the panel's finding that considering only one of the two *Yura* factors is substantial compliance with the holding in *Palmer*. The *Yura* test for good cause to dispense with confrontation requires that the district court consider both factors, including the State's explanation why live testimony is undesirable or impractical. Therefore, we reverse and remand for the district court to determine whether good cause existed to dispense with Luna's live testimony, applying the two-factor test set forth in *Yura*.

Reversed and remanded.